UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM J. WALLACE,
*Plaintiff*,

v().

WESLEYAN UNIVERSITY,
*Defendant.*

No. 3:23-cv-01461 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

William J. Wallace ("Mr. Wallace" or "Plaintiff") has sued Wesleyan University ("Wesleyan" or "Defendant") alleging whistleblower retaliation in violation of Connecticut General Statutes § 31-51m ("Count One"), free speech retaliation in violation of Connecticut General Statutes § 31-51q ("Count Two"), religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") ("Count Three") and the Connecticut Fair Employment Practices Act ("CFEPA") ("Count Four"), age discrimination in violation of CFEPA and the Age Discrimination in Employment Act (the "ADEA") ("Count Five"), retaliation in violation of Title VII and CFEPA ("Count Six"), and a hostile work environment under Title VII ("Count Seven"). Not. of Removal, Ex. A, ECF No. 1 (Nov. 6, 2023) ("Compl.").

Wesleyan has filed a motion to dismiss Mr. Wallace's Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss, ECF No. 14 (Dec. 14, 2023) ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED** as to Mr. Wallace's federal claims.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

To the extent the deficiencies identified in the factual allegations in Mr. Wallace's Complaint, as to his federal claims, can be remedied, he may move for leave to amend the Complaint by **August 23, 2024**.

If no proposed amended pleading is filed by that date, or if the motion for leave to amend demonstrates that amending the federal claims would be futile, the Court will remand the state law claims and the remainder of the case back to Connecticut Superior Court.

I.   FACTUAL AND PROCEDURAL BACKGROUND

A.  Factual Allegations

On August 17, 2015, Wesleyan hired Mr. Wallace as the university's Catholic chaplain in the Office of Religious and Spiritual Life. Compl. Count One ¶¶ 3–4.[1]

On July 21, 2020, Omar Bayramoglu, a part-time Muslim chaplain, allegedly informed Rabbi David Teva, the director of the Office of Religious and Spiritual Life, that he intended to engage in prison ministry to supplement his income from Wesleyan but would continue as a part-time chaplain at Wesleyan. *Id*. at ¶ 6. Shortly after, Mr. Wallace allegedly received a campus-wide e-mail announcing Chaplain Bayramoglu's departure from Wesleyan. *Id*. at ¶ 7. Mr. Wallace allegedly reached out to Chaplain Bayramoglu and learned that he was being involuntarily separated. *Id*.

---

[1] Because Mr. Wallace's Complaint does not use consecutive numbering, the Court will refer to the Complaint by citing to the count and paragraph.

Mr. Wallace allegedly sent an e-mail to Richard Culliton, the Dean of Students, Michael Whaley, the Vice President of Student Affairs, and Lisa Brommer, the Associate Vice President for Human Resources, protesting the termination of Chaplain Bayramoglu. *Id*. at ¶ 8.

On October 7, 2020, on a call with Mr. Whaley and Mr. Culliton, Mr. Wallace alleges that he again protested Chaplain Bayramoglu's termination and was allegedly sternly admonished to not use the word "termination." *Id*. at ¶ 9. On this call, Mr. Wallace also allegedly questioned the decision to dismantle the Office of Religious and Spiritual Life. *Id*.

On October 26, 2020, Mr. Wallace allegedly wrote to Wesleyan's president to further protest the decision to permanently dismantle the Office of Religious and Spiritual Life and send students off-campus for spiritual resources amidst a pandemic. *Id*. at ¶ 10. Mr. Wallace allegedly published a similar letter in the school's newspaper, which prompted an investigation into Chaplain Bayramoglu's departure and Mr. Whaley's decision to dismantle the Office of Religious and Spiritual Life. *Id*. at ¶ 11.

On January 28, 2021, Mr. Wallace was allegedly informed that Rabbi Teva stated, in response to the controversy, that "the Catholics and Protestants don't need a chaplain." *Id*. at ¶ 12.

Following an in-person conversation that Mr. Wallace had with Mr. Whaley on June 10, 2021, during which Mr. Whaley allegedly praised and thanked Mr. Wallace for his work, achievements, and contributions, Mr. Wallace learned that his performance appraisal, written by Mr. Whaley, was "overwhelmingly negative" and that Mr. Wallace would be receiving only a 2% pay increase as opposed to his prior increases of 3%. *Id*. at ¶ 14.

On October 20, 2021, Mr. Wallace received a written performance improvement plan from Mr. Whaley reiterating the need for improvement under the threat of termination. *Id.* at ¶ 15.

Throughout his seven-year employment, Mr. Wallace's annual performance reviews consistently showed him meeting or exceeding expectations. *Id.* Count One ¶ 5.

On June 8, 2022, Mr. Wallace was discharged allegedly as a result of his complaints about the termination of Chaplain Bayramoglu, the decision to dismantle the Office of Religious and Spiritual Life, and his communication with the school's newspaper. *Id.* at ¶ 18.

### B. Procedural History

On October 23, 2023, Mr. Wallace filed his Complaint in the Connecticut Superior Court Judicial District of Middlesex at Middletown. Not. of Removal, ECF No. 1 (Nov. 6, 2023) ("Not. of Removal").

On November 6, 2023, Wesleyan removed this case to federal court. *Id.*

On December 14, 2023, Wesleyan filed a motion to dismiss the Complaint. Mot.; Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 14-1 (Dec. 14, 2023) ("Mem.").

On January 18, 2024, Mr. Wallace filed a memorandum of law in opposition to Wesleyan's motion to dismiss. Mem. of L. in Supp. of Opp'n. to Mot. to Dismiss, ECF No. 19-1 (Jan. 18, 2024) ("Opp'n").

On February 12, 2024, Wesleyan filed a reply in support of its motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 23 (Feb. 12, 2024) ("Reply").

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The Court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.   DISCUSSION

In its motion to dismiss, Wesleyan argues that each count of Mr. Wallace's Complaint fails to state a claim upon which relief may be granted.

The Court will address each count in turn, beginning with Mr. Wallace's federal claims. If his federal claims do not survive, the Court will have to determine whether his state law claims should be remanded back to state court.

#### A.  The Religious Discrimination Claims

Title VII prohibits employers from discriminating against an employee because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). To state a claim for religious discrimination under Title VII, "a plaintiff must establish that: (1) she [or he] is a member of a protected group; (2) she [or he] was qualified for the position she held; and (3) she [or he] was discharged [or otherwise suffered an adverse employment action] under circumstances giving rise to an inference of religious discrimination." *Mincey v. Univ. of Rochester*, No. 01-CV-6159 (MAT), 2006 WL 3169108, at *4 (W.D.N.Y. Nov. 2, 2006), *aff'd*, 262 F. Appx. 319 (2d Cir. 2008)

6

(citing *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2nd Cir. 2003)); *see also Kramsky v. Chetrit Grp., LLC*, No. 10 CIV. 2638 (HB), 2011 WL 2326920, at *6 (S.D.N.Y. June 13, 2011) ("To establish a prima facie case of discrimination, a plaintiff bears the burden to establish that: '(1) he [or she] is a member of the protected class; (2) he [or she] is qualified for his position; (3) he [or she] has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of . . . discrimination.'" (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001))).

Wesleyan argues that Mr. Wallace cannot establish any of the elements of a *prima facie* case of religious discrimination through a failure to accommodate under Title VII or CFEPA. Mem. at 10. Alternatively, Wesleyan argues that, if establishing a *prima facie* case for discrimination under CFEPA mirrors other Title VII claims, then Mr. Wallace cannot establish that an adverse action occurred under circumstances giving rise to an inference of discrimination. *Id*. Wesleyan argues, *inter alia*, that Rabbi Teva's alleged statement is insufficient to give rise to an inference of discrimination because Mr. Wallace does not allege that the statement was made to him or about him. Mem. at 12. Wesleyan further argues that even if this statement was taken as true, it is not derogatory or a slur, but rather, it is simply a statement about the organizational needs of the office. *Id*. at 13.

In response, Mr. Wallace argues that his bona fide religious belief conflicted with his employment "in that the Defendant intended to reduce the [Office of Religious and Spiritual Life] to one Chaplain, Teva, a Jewish rabbi, and the discriminatory intent can be seen as eliminating the other religious chaplains thus minimizing the ability to pastor to this segment of the student population." Opp'n at 13.

The Court disagrees.

7

As an initial matter, Mr. Wallace did not plead a failure to accommodate claim. Thus, the Court will only assess whether Mr. Wallace has otherwise stated a claim for religious discrimination and rely on the general legal standard for pleading a Title VII discrimination claim. And while Mr. Wallace's allegations are sufficient as to the first two elements for stating a claim—alleging membership in a protected group, and being qualified for the position—the factual allegations in his Complaint are insufficient as to the third and fourth elements: suffering an adverse employment action giving rise to an inference of religious discrimination.

His Complaint contains two alleged instances of religious discrimination: (1) being informed that Rabbi Teva, the director of the Office of Religious and Spiritual Life, stated that "the Catholics and Protestants don't need a chaplain," Compl., Count One ¶ 13, Counts Three and Four ¶ 25; and (2) allegedly being terminated for speaking out on behalf of the Muslim students and chaplain, *id*. ¶ 26.

As to the first instance, Mr. Wallace did not have to allege that the comment was made specifically about him—it suffices that the alleged comment was made about his protected class. *See Myers v. Doherty*, No. 21-3012-CV, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022) ("An inference of discriminatory intent may arise from an employer's invidious comments about others in the employee's protected group."). The Court thus need not assess the source of the alleged statement—in other words, the admissibility of the statement—as the Court must take the allegation that this statement was made as true at this stage. *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 991 n.7 (S.D.N.Y. 2017) ("[T]he ultimate admissibility of evidence included in a complaint is immaterial when deciding a motion to dismiss."). Mr. Wallace had only a "minimal burden to show discriminatory intent[,]" *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), and the alleged statement is not so devoid of any

negative implication that it is insufficient to give rise to an inference of discrimination, *see Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (finding that a comment referencing the plaintiff's religious practice was "devoid of a negative implication").

But, despite all of that, Mr. Wallace does not allege Rabbi Teva's involvement in his termination, which is necessary to link Rabbi Teva's alleged comment to his termination. *See Abada v. Delta Air Lines, Inc.*, No. 19-CV-3903 (KAM) (VMS), 2020 WL 7481326, at *4 (E.D.N.Y. Dec. 18, 2020), *aff'd*, No. 21-123-CV, 2022 WL 894704 (2d Cir. Mar. 28, 2022) ("What is crucially missing from the complaints, however, is any link between this alleged animus and the adverse actions taken against Plaintiffs. Plaintiffs do not allege that the specific employees who made the quoted derogatory remarks were involved in the investigations or terminations of Plaintiffs.").

As to the second instance, this is an allegation that Mr. Wallace had been terminated in retaliation for his statements about Chaplain Bayramoglu, *see* Mem. at 13 ("To the extent this allegation is relevant to any of Plaintiff's Title VII or CFEPA claims, it relates to Plaintiff's claim for retaliation . . . ."), not a claim that Mr. Wallace had been terminated because of his own membership in a protected class, *cf. Blue v. City of Hartford*, No. 3:18-CV-00974 (CSH), 2019 WL 612217, at *6 (D. Conn. Feb. 13, 2019) ("The chief issue is that Plaintiff has not alleged that these adverse employment actions, or any actions for that matter, were done because Plaintiff is a member of a protected class."), *adhered to in part on reconsideration*, No. 3:18-CV-00974 (CSH), 2019 WL 1559430 (D. Conn. Apr. 10, 2019) (reaffirming that "[p]rotected class membership, standing alone, does not state a Title VII claim.").

Accordingly, the Court will grant Defendant's motion to dismiss as to Count Three.

9

B. **The Age Discrimination Claims**

"The ADEA makes it 'unlawful for an employer . . . to discharge any individual . . . because of such individual's age.'" *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021) (quoting 29 U.S.C. § 623(a)). "To state a claim for age discrimination under the ADEA, a plaintiff must plausibly allege that '(1) her employer took adverse action against her, and (2) that age was the "but for" cause in the employer's adverse action.'" *Gupte v. Watertown Bd. of Educ.*, No. 3:17-CV-283 (JCH), 2018 WL 4054880, at *5 (D. Conn. Aug. 24, 2018) (first quoting *Simpson v. MTA/N.Y.C. Transit Auth.*, No. 16-CV-3783 (MKB), 2016 WL 8711077, at *4 (E.D.N.Y. Aug. 26, 2016) and then citing *Ingrassia v. Health and Hosp. Corp.*, 130 F. Supp. 3d 709, 720 (E.D.N.Y. 2015)).

Wesleyan argues that Mr. Wallace simply asserting his age is insufficient to give rise to an inference of discrimination. Mem. at 14.

In response, Mr. Wallace notes that he alleged that he was seventy-three years old at the time of his discharge and that his age was improperly considered in the decision to terminate him. Opp'n at 14. Also, Mr. Wallace argues that because he was terminated so soon after being issued a performance improvement plan, an inference can be made that Wesleyan intended for Mr. Wallace to retire instead of continuing with his employment since he was of retirement age. *Id.* at 14–15.

The Court disagrees.

In his Complaint, Mr. Wallace alleges the following: "Wallace is 75 years of age and a motivating factor in terminating his employment in June of 2022 was his age. Specifically, Wallace was 73 at the time of his discharge, and this was improperly considered in ending his employment." Compl. Count Five ¶ 25. This, however, is a bare conclusion. And given that the

Complaint contains no factual allegations that could give rise to a plausible inference of age discrimination, other than listing Mr. Wallace's age, he has failed to state a claim for age discrimination. *See Bockus v. Maple Pro, Inc.*, 850 F. Appx. 48, 52 (2d Cir. 2021) ("Bockus alleges no facts that could give rise to a plausible inference of age discrimination. Indeed, other than listing his age and date of birth, the complaint does not contain any allegations whatsoever relating to his age. Thus, the complaint fails to raise any inference that Maple Pro terminated Bockus because of his age."); *see also Twombly*, 550 U.S. at 555 (2007) ("'[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)).

Accordingly, the Court will grant Defendant's motion to dismiss as to the ADEA claim in Count Five.

### C. The Retaliation Claims

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting § 2000e–3(a)).

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004).

> "Under Title VII, protected activity includes both 'opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings.'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). And although an informal complaint may constitute protected activity, such complaints "cannot be so vague or 'generalized' that the employer could not 'reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII.'" *Id.* at 222 (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

Here, Wesleyan does not contest that Mr. Wallace has sufficiently alleged an adverse employment action. Wesleyan argues, however, that Mr. Wallace has not adequately pled the remaining elements of a *prima facie* case for retaliation. Mem. at 16.

In response, Mr. Wallace argues that he was not required to plead a *prima facie* case of retaliation, but rather he was required to—and did—allege that Defendant took an adverse employment action because he opposed an unlawful employment practice. Opp'n at 15–18.

The Court disagrees.

Mr. Wallace alleges that he was placed on a performance improvement plan and ultimately terminated because "he spoke out about discriminatory conduct toward" Chaplain Bayramoglu, the Muslim chaplain. Compl. Count Six ¶ 21–23.

Complaining of discriminatory conduct—in other words, conduct violating Title VII—is protected activity "satisfying the first element of this test, 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001)). "And not just any law—the

plaintiff is 'required to have had a good faith, reasonable belief that [he or she] was opposing an employment practice made unlawful by Title VII.'" *Id.*

Here, Mr. Wallace allegedly complained of Chaplain Bayramoglu being "involuntarily separated" after notifying Rabbi Teva of "some prison ministry work" that Chaplain Bayramoglu intended to do. Compl. Count One ¶ 6–7. But Mr. Wallace does not allege anywhere in his Complaint that he possessed a good-faith belief that the basis for Chaplain Bayramoglu's termination involved any trait or membership in a protected class; nor does he allege that Wesleyan understood him to be complaining of such conduct. *Kelly*, 716 F.3d at 16–17 ("[T]here is no indication either that Kelly herself possessed a good-faith belief that she was complaining of conduct prohibited by Title VII or that her employers could have understood her complaints in this way. . . . She made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise.").

As a result, the complaint about Chaplain Bayramoglu's termination, without more, is insufficient to plead that Mr. Wallace engaged in a protected activity.

Accordingly, the Court will grant Defendant's motion to dismiss as to the Title VII claim in Count Six.

### D.  The Hostile Work Environment Claim

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected trait].'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).

"A plaintiff must, even at the pleading stage, allege some facts 'that would allow a court to draw a reasonable inference that [he or she] was subjected to any mistreatment or adverse action *because of* [his or] her [protected characteristic].'" *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 516 (E.D.N.Y. 2019) (emphasis in original) (first quoting *Lucio v. N.Y.C. Dep't of Educ.*, 575 F. Appx. 3, 5 (2d Cir. 2014); and citing *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); and then citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.")).

Wesleyan argues that Mr. Wallace has not alleged hostility directed at him because of his religion and has not alleged the degree of hostility required to state a claim for hostile work environment. Mem. at 19.

In response, Mr. Wallace argues that he has sufficiently alleged harassment in the form of continuous threats to his employment status as a Catholic chaplain, which subjectively offended him and negatively impacted his employment. Opp'n at 20.

The Court disagrees.

Mr. Wallace alleged that he "was subjected to a hostile work environment based on his opposition to the treatment of the Muslim Chaplain, Omar, and his protected activity in

protesting both the firing of Omar and the dismantling of the [Office of Religious and Spiritual Life]." Compl. Count Seven ¶ 24.

Mr. Wallace alleged that he was subjected to a hostile work environment not because of his religion or other protected trait, but because of his protesting, which is insufficient to state a claim for a hostile work environment. *See Sosa*, 368 F. Supp. 3d at 521 (granting motion to dismiss Title VII hostile work environment claim because the "allegations fail[ed] to allege in a non-conclusory fashion that the abusive environment was because of Sosa's membership in a protected class"). Any hostile work environment that Mr. Wallace may have faced because of protected speech, may be considered as an adverse employment action in establishing a free speech retaliation claim. *See Tringali v. S. Country Cent. Sch. Dist.*, No. CV 06-3393 (SJF), 2007 WL 9710318, at *14 (E.D.N.Y. July 19, 2007) (determining that a hostile work environment "may form the basis of an adverse disciplinary action for purposes of a constitutional retaliation claim"), *report and recommendation adopted*, No. CV 06-3393 (SJF) (MLO), 2007 WL 9710317 (E.D.N.Y. Sept. 10, 2007).

In any event, regardless of the alleged basis for Mr. Wallace's hostile work environment claim, his allegations are far too cursory, and require much more, to survive a motion to dismiss. In fact, he does little more than recite the elements of this claim, which is insufficient. *See Twombly*, 550 U.S. at 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)).

Accordingly, the Court will grant Defendant's motion to dismiss as to the federal hostile work environment claims in Count Seven.

15

### E. The Remaining State Law Claims

Having dismissed all of Mr. Wallace's federal claims, his state law claims, which originally were brought in state court, should be remanded to state court, and adjudicated there. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, to the extent that the federal claims cannot be properly replead, this case will be remanded back to state court.

## IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED** as to Mr. Wallace's federal claims.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

To the extent the deficiencies identified in the factual allegations in Mr. Wallace's Complaint, as to his federal claims, can be remedied, he may move for leave to amend the Complaint by **August 23, 2024**.

If no proposed amended pleading is filed by that date, or if the motion for leave to amend demonstrates that amending the federal claims would be futile, the Court will remand the state law claims and the remainder of the case back to Connecticut Superior Court.

**SO ORDERED** at New Haven, Connecticut, this 2nd day of August, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE