CUNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM J. WALLACE,
*Plaintiff,*

v.                                              No. 3:23-cv-01461 (VAB)

WESLEYAN UNIVERSITY,
*Defendant.*

**RULING AND ORDER ON MOTION TO AMEND**

William J. Wallace ("Mr. Wallace" or "Plaintiff") has filed a motion to amend the
Complaint, with a proposed Amended Complaint alleging Count One, free speech retaliation in
violation of Conn. Gen. Stat. § 31-51q; Count Two, religious discrimination in violation of Title
VII of the Civil Rights Act; Count Three, religious discrimination in violation of Conn. Gen.
Stat. § 46A-60(b)(1); Count Four, retaliation in violation of Title VII of the Civil Rights Act and
Connecticut Fair Employment Practices Act ("CFEPA"); and Count Five, hostile work
environment against Wesleyan University ("Wesleyan" or "Defendant"). Proposed Amended
Complaint, Exhibit A, Motion to Amend Complaint, ECF 29-2 (Aug. 23, 2024) ("Proposed Am.
Compl.").

Wesleyan has filed a memorandum in opposition to the motion for leave to amend.
Memorandum in Opposition, ECF No. 30 (Sept. 10, 2024) ("Memo. in Opp.").

For the following reasons, the motion for leave to amend is **GRANTED in part and
DENIED in part**.

Leave to amend Count Four and Count Five is **DENIED** as futile.

Leave to amend Counts One, Two, and Three is **GRANTED**.

Mr. Wallace may proceed on Count Two, religious discrimination in violation of Title VII, and the state law claims in Count One and Count Three in the Proposed Amended Complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On August 17, 2015, Wesleyan hired Mr. Wallace as the university's Catholic chaplain in the Office of Religious and Spiritual Life ("ORSL"). Proposed Am. Compl. ¶ 4. He had the "primary responsibility for worship and the development of the Roman Catholic community on campus," including providing religious instruction, counseling students, advising the Catholic Student Organization ("CSO"), and facilitating campus-wide events and programs. *Id.* ¶ 5.

Since the beginning of his employment, Mr. Wallace allegedly received annual performance revies that "consistently showed Wallace meeting or exceeding expectations." *Id.* ¶ 6.

On November 5, 2018, the CSO submitted a formal budget request for funding for the annual ski retreat for Catholics and students of all faiths to the Wesleyan Student Assembly. *Id.* ¶ 7. This request for funding was denied on initial review and on appeal to the Student Assembly Appeals Board. *Id.* ¶¶ 7–8.

The CSO had allegedly been denied funding in 2017 and 2018. *Id.* ¶ 10. In 2018, the CSO's request was one of the 16 out of 291 total requests to be denied funding. *Id.* ¶ 10. The Protestant Christian Fellowship allegedly received $15,661 and the Sangha/Zen group $6,755.

On April 28, 2019, Mr. Wallace allegedly sent an e-mail to the Interim Vice President for Equity and Inclusion and Title IX Officer, Debbie Colucci "expressing concerns of bias and prejudice against the CSO and the Catholic community." *Id.* ¶ 9. This e-mail included the allegation that a student on the Student Assembly had told a member of the Catholic community that the ski trip funding was denied because the Assembly was "afraid that if [they] granted the money to the CSO it would look like [the Student Assembly] was favoring Catholics." *Id.*

Around January 7, 2020, the Appeals Board allegedly announced that there had been an error in denying the CSO funding, as the Student Assembly had not followed its own procedures and "failed to properly evaluate" components of the proposed retreat. *Id.* ¶ 11.

On January 24, 2020 the Student Budge Committee allegedly voted to deny CSO's budget request. *Id.* ¶ 12. Mr. Wallace chose to cover the requested amount from his personal funds. *Id.*

In May of 2019, the Religion Department at Wesleyan allegedly sponsored "a lecture run by mock nuns known as the 'The Sisters of Perpetual Indulgence.'" *Id.* ¶ 13. The mock nuns promoted the lecture with flyers referring to "Holy Communion Condoms" and calling Jesus the "Condom Savior." *Id.* Mr. Wallace allegedly received complaints from the Catholic community on campus regarding the flyers and the event. *Id.* Mr. Wallace expressed his concern to school administration who allegedly did nothing. *Id.*

In another incident a tenured professor allegedly berated a Catholic student for "being part of a religion that consisted of 'delusional perverts,'" and told the student that the "Catholic Church is the greatest of human rights violators." *Id.* ¶ 14

Mr. Wallace alleges that together, these events "evinced a pattern of discrimination and an atmosphere of discrimination" against the Catholic Community. *Id.* ¶ 15.

Around August 8, 2019, Bishop Michael Cote of the Norwich Diocese allegedly sent a letter to Wesleyan President Michael Roth, stating his concerns about the treatment of Catholics at Wesleyan and that the Catholic Diocese partially funded the Catholic Priest's salary unlike other University chaplains. *Id.* ¶ 16.

Around July 21, 2020, a part-time Muslim chaplain allegedly indicated to the director of ORSL, Rabbi David Teva, that he was going to do prison ministry work to supplement his income from Wesleyan. *Id.* ¶ 17.

Around July 30, 2020, Mr. Wallace allegedly learned that the Muslim chaplain had been "involuntarily separated from the University" and that the chaplain was unaware of this dismissal prior to campus-wide email announcing the departure. *Id.* ¶ 18.

Mr. Wallace then sent an e-mail to school administration, including Rabbi Teva, protesting the termination of the chaplain and encouraging administrators to resolve the problem with the chaplain. *Id.* ¶ 19. The school administration allegedly proceeded to terminate the chaplain's employment, "leaving the Muslim student community without any spiritual leader." *Id.* In his communications, Mr. Wallace was allegedly clear that he viewed the administration's actions as discriminatory to the Muslim community. *Id.*

On October 7, 2020, Mr. Wallace again raised the issue of the chaplain's termination to Dean of Students Richard Culliton and Vice President of Student Affairs Michael Whaley. *Id.* ¶ 20. Mr. Wallace also questioned the "unilateral decision" by Vice President Whaley to "dismantle ORSL, reduce ORSL to one chaplain, and send the students off campus to the local places of worship." *Id.* Mr. Wallace additionally expressed his concerns regarding ORSL to President Roth on October 26, 2020. *Id.* ¶ 21.

On October 29, 2020, Mr. Wallace published an open letter in the school newspaper raising his concerns with the reduction of ORSL and the termination of the Muslim chaplain. *Id.* ¶ 22. This letter allegedly generated "wide-spread support" and resulted in an "in-depth investigation and article" covering the issues. *Id.* After the letter was published, Rabbi Teva allegedly sent an e-mail to Mr. Wallace stating that the article "accurately captured the unique, foundational, protean and crucial roles" of the Wesleyan chaplains. *Id.* ¶ 23

Around January 28, 2021, Mr. Wallace was informed that Rabbi Teva allegedly stated "Catholics and Protestants don't need a Chaplain" in response to the controversies around the scaling down of ORSL. *Id.* ¶ 24.

Shortly thereafter, Wesleyan administrators allegedly decided that ORSL would not be scaled down and agreed to hire a new full-time Muslim chaplain. *Id.* ¶ 24.

On a video call on April 14, 2021, Vice President of Student Affairs Whaley allegedly "praised Wallace for his contributions to interfaith and vision statement" and had "nothing negative to say about Wallace." *Id.* ¶ 25.

On another call on April 23, 2011, Mr. Whaley allegedly acknowledged Mr. Wallace's concerns about Rabbi Teva's "lack of communication as the Director of ORSL" and "refusal to reply to Wallace's emails." *Id.* ¶ 26.

On a third call on May 14, 2021, Mr. Whaley alleged informed Mr. Wallace that he was working on Mr. Wallace's performance review and stated that Mr. Wallace "brought a lot of strengths to his position" and had "a strong presence and engagement on campus." *Id.* ¶ 27

In June of 2021, Mr. Wallace sent his performance report to Mr. Whaley, reflecting on his work for the year. *Id.* ¶ 29. After the report was sent, Mr. Whaley and Mr. Wallace had an in-person discussion on Mr. Wallace's work. *Id.* During this discussion, Mr. Whaley allegedly

provided no criticism to Mr. Wallace regarding his advocacy related to ORSL and made no mention of any deficiencies with Mr. Wallace's work. *Id.*

Mr. Wallace later learned that his written performance appraisal, drafted by Mr. Whaley, was "overwhelmingly negative" and that Mr. Wallace would be receiving only a two percent pay increase as opposed to his prior increases of three percent. *Id.* at ¶ 30.

Over the summer of 2021, Mr. Wallace requested that the search committee for the new Muslim chaplain include himself and at least one member of the Muslim community. *Id.* ¶ 31. In the fall, Rabbi Teva was appointed to lead the hiring committee, and Mr. Wallace was not made a member, despite alleged "strenuous objections of the Muslim students who wanted Wallace on the committee." *Id.* ¶ 31.

Around September 28, 2021, Mr. Whaley sent an e-mail to Mr. Wallace, informing him of a performance improvement plan ("PIP"). *Id.* ¶ 32. This e-mail came three days after Mr. Walace had sent an e-mail to administration criticizing the decision to leave him off the hiring committee. *Id.*

On October 20, 2021, Mr. Wallace provided a rebuttal to his negative performance review. *Id.* ¶ 33. On or around the same date, Mr. Wallace allegedly received a written PIP from Mr. Whaley, emphasizing the need for improvement and placing him "under threat of termination." *Id.* Mr. Wallace objected to the PIP in e-mails to administration, questioning whether the criticism of his work was retaliation for speaking to the school newspaper on the termination of the Muslim chaplain and criticizing the potential scaling back of ORSL. *Id.*

On June 8, 2022, Mr. Wallace was discharged from his position, allegedly "as a result of his complaints about the denied budget request, the termination of the Muslim chaplain, the dismantling of ORSL, and communicating with the [Wesleyan student newspaper.]" *Id.* ¶ 35.

### B.  Procedural History

On October 23, 2023, Mr. Wallace filed his Complaint in the Connecticut Superior Court Judicial District of Middlesex at Middletown. Not. of Removal, ECF No. 1 (Nov. 6, 2023) ("Not. of Removal").

On November 6, 2023, Wesleyan removed the case to federal court. *Id.*

On December 14, 2023, Wesleyan filed a motion to dismiss the Complaint. Mot.; Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 14-1 (Dec. 14, 2023).

On January 18, 2024, Mr. Wallace filed a memorandum of law in opposition to Wesleyan's motion to dismiss. Mem. of L. in Supp. of Opp'n. to Mot. to Dismiss, ECF No. 19-1 (Jan. 18, 2024).

On February 12, 2024, Wesleyan filed a reply in support of its motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 23 (Feb. 12, 2024).

On August 2, 2024, the Court granted Wesleyan's motion to dismiss. Order Granting Mot. to Dismiss, ECF No. 28 (Aug. 2, 2024) ("Order").

On August 23, 2024, Mr. Wallace filed a motion for leave to amend the Complaint. First Mot. to Amend the Complaint, ECF No. 29 (Aug. 23, 2024).

On September 10, 2024, Wesleyan filed a memorandum in opposition to the motion for leave to amend. Memo in Opp.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)). A court will "only deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed." *Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2018 WL 4323816, at *4 (D. Conn. Sept. 10, 2018).

## III. DISCUSSION

The Court will address each of Mr. Wallace's claims in turn, starting with the federal counts. If amendment of the federal counts is futile, the Court will remand the case to state court,

consistent with its Order granting the motion to dismiss. *See* Order at 16 ("Accordingly, to the extent that the federal claims cannot be properly replead, this case will be remanded back to state court.").

### A.  The Religious Discrimination Claims

Title VII prohibits employers from discriminating against an employee because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). At the pleading stage, a plaintiff has a "'*minimal* burden' of alleging facts 'suggesting an inference of discrimination motivation.'" A plaintiff must show that "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). When there is no direct evidence of discrimination, a plaintiff must plead facts that plausibly show "the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2015)) (cleaned up).

Mr. Wallace alleges that his termination was the result of discrimination against him as a Catholic, specifically pointing to Rabbi Teva's alleged statement that Catholics do not need a chaplain. Proposed Compl. ¶ 38. Mr. Wallace additionally alleges that his decision to speak out on behalf of the Muslim community after the dismissal of the Muslim chaplain led to his termination. *Id.* ¶ 39.

Wesleyan argues that Mr. Wallace's amendments are futile as he does not allege Rabbi Teva's involvement in his termination, and that Mr. Wallace's allegation regarding the termination of the Muslim chaplain is not a claim related to discrimination due to his own membership of a protected class. Memo. in Opp at 5.

The Court agrees, in part.

To the extent Mr. Wallace alleges his termination was partially due to his advocacy on behalf of the Muslim community, he has failed to state a claim that he experienced discrimination due to his own religion. *See Vega*, 801 F.3d at 85 ("Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001), ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). Any religious discrimination claim based on this alleged motivation must thus fail.

Mr. Wallace has, however, added allegations plausibly demonstrating Rabbi Teva's influence in the staffing decisions of ORSL. Mr. Wallace alleges that Rabbi Teva regularly met with school administrations who placed Mr. Wallace on the PIP and notified him of his termination. Proposed Compl. ¶¶ 23, 38. During these meetings, Mr. Wallace alleges, Rabbi Teva, as director of ORSL, influenced staffing decisions and the down-sizing of ORSL. *Id.* Additionally, Mr. Wallace provides allegations plausibly suggesting that Rabbi Teva was routinely involved in staffing decisions of ORSL. *See, e.g.*, *id.* ¶¶ 17–19 (alleging that Rabbi Teva played a role in the dismissal of the Muslim chaplain); *id.* ¶ 31 (alleging that Rabbi Teva "commenced" and led the search for a new Muslim chaplain as the "hiring manager").

"The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311. Rather, "[t]hey need only give plausible support to a

minimal inference of discriminatory motivation." Mr. Wallace's allegations that Rabbi Teva professed "the Catholics and Protestants don't need a chaplain" and had at least some authority over the staffing decisions of ORSL meet this minimum standard. *See, e.g.*, *Adeniji v. New York State Office of the Comptroller*, No. 18 Civ. 0761 (PAE) (BCM), 2019 WL 4171033, at *4, *5 n.5 (S.D.N.Y. Sept. 3, 2019) (concluding that remarks from interviewer were sufficient to plead a claim of discrimination under Title VII when interviewer had some say in the hiring process); *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 152 (S.D.N.Y. 2022) ("These statements support an inference of discrimination because they are remarks by decisionmaker reflecting discriminatory animus.").

Accordingly, Mr. Wallace's motion for leave to amend the Complaint is granted with respect to Count Two allegations that Mr. Wallace's termination was motivated by discrimination towards Catholics.

### B.  The Retaliation Claims

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting § 2000e–3(a)).

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)).

"Under Title VII, protected activity includes both 'opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings.'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). And although an informal complaint may constitute protected activity, such complaints "cannot be so vague or 'generalized' that the employer could not 'reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII.'" *Id.* at 222 (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

In Count Four of the Proposed Amended Complaint, Mr. Wallace alleges that Wesleyan retaliated against him for speaking out against allegedly discriminatory conduct against the Muslim community at Wesleyan, primarily the termination of the Muslim chaplain. Proposed Compl. ¶ 42.

Wesleyan argues that the proposed amendments to this count are futile, as Mr. Wallace fails to allege sufficient facts to demonstrate that he believed Wesleyan had violated Title VII in when terminating the employment of the former Muslim chaplain. Memo. in Opp. at 6.

The Court agrees.

Complaining of discriminatory conduct—in other words, conduct violating Title VII—is protected activity "satisfying the first element of this test, 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001)). "And not just any law—the plaintiff is 'required to have had a good faith, reasonable belief that [he or she] was opposing an employment practice made unlawful by Title VII.'" *Id.*

Here, Mr. Wallace does not allege facts suggesting that he reasonably believed the termination of the Muslim chaplain violated Title VII. Instead, his allegations state that his concern was with "the way [the termination] was handled" and "the failure to properly communicate" with the staff of ORSL. Proposed Compl. ¶ 19. Mr. Wallace does not allege that he believed that the basis for the termination was due to the chaplain's religion or membership in any other protected class. *See Kelly*, 716 F.3d at 16–17 ("[T]here is no indication either that Kelly herself possessed a good-faith belief that she was complaining of conduct prohibited by Title VII.").

Mr. Wallace does add that he "was clear in his communications" to Wesleyan administrators that he viewed the termination of the Muslim chaplain as "discriminatory" to the chaplain and Muslim community. Proposed Compl. ¶ 19. But, labeling something as "discriminatory" is not sufficient to demonstrate that there was good-faith, reasonable belief that Title VII was violated in the absence of other supporting facts. *See Kelly*, 716 F.3d at 15 ("A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form."); *id.* ("Although Kelly alleges that she repeatedly used the words 'discrimination' and 'harassment' when complaining to her employers, her 'argument that the widespread sexual favoritism constituted gender discrimination because it resulted in an atmosphere 'demeaning to women' [ ] is entirely unsupported by the allegations in her complaint.'" (citation omitted)); *Johnson v. City Univ. of New York*, 48 F. Supp. 3d 527, 577 (S.D.N.Y. 2014) ("Johnson might have believed that any bullying, regardless of whether it was motivated by impermissible discrimination, constituted a violation of Title VII, but a 'mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by *objective* good faith.'" (citation omitted)).

Accordingly, the amendment of Count Four is futile, and the Court will deny the leave to amend.

### C. The Hostile Work Environment Claim

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected trait].'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).

"A plaintiff must, even at the pleading stage, allege some facts 'that would allow a court to draw a reasonable inference that [he or she] was subjected to any mistreatment or adverse action *because of* [his or] her [protected characteristic].'" *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 516 (E.D.N.Y. 2019) (emphasis in original) (quoting *Lucio v. N.Y.C. Dep't of Educ.*, 575 F. Appx. 3, 5 (2d Cir. 2014)).

Mr. Wallace alleges that he was subject to a hostile work environment "based on his opposition to the treatment of the Muslim Chaplain" and "protesting" of the planned down-sizing for ORSL. Proposed Compl. ¶ 45.

Wesleyan argues that amendment to the hostile work environment claim is futile.

The Court agrees.

As in the first Complaint, Mr. Wallace alleges that he was subjected to a hostile work environment not because of his religion or other protected trait, but because of his protesting, which is insufficient to state a claim for a hostile work environment. *See Sosa*, 368 F. Supp. 3d at 521 (granting motion to dismiss Title VII hostile work environment claim because the

"allegations fail[ed] to allege in a non-conclusory fashion that the abusive environment was because of Sosa's membership in a protected class").

To the extent Mr. Wallace has added factual allegations related to the treatment of Catholics on campus, these allegations too are insufficient to support a hostile work environment claim. Mr. Wallace seeks to add detail related to a mock lecture where people dressed as nuns referred to Jesus as the "Condom Savior," a tenured professor's alleged comments that Catholics were "delusional perverts," and the Norwich Diocese's concerns with anti-Catholic sentiment at Wesleyan. Proposed Compl. ¶¶ 14–16.

While Mr. Wallace alleges incidents that may have been offensive to him, they are not severe or pervasive enough to support a hostile work environment claim. *See Ennis v. Sonitrol Management Corp.*, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006) ("Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency."); *Littlejohn*, 795 F.3d at 321 ("In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance . . . .'" (quoting *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 23 (1993)). Furthermore, Mr. Wallace does not allege that these comments had such an effect on him to interfere with his ability to do his job. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) ("Courts must look at the totality of the circumstances  . . . and should consider . . . whether [the behavior] unreasonably interferes with an employee's 'work performance.'" (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Accordingly, amendment to Mr. Wallace's hostile work environment claim, Count Five, is futile and leave to amend will be denied.

### D. The State Law Claims

Since Mr. Wallace has properly replead his Title VII religious discrimination claim, the Court will exercise supplemental jurisdiction over Mr. Wallace's replead state law claims, as they "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Wesleyan opposes amendment to Count Four, which includes Mr. Wallace's state law retaliation claim. *See* Memo. in Opp. at 6. Wesleyan does not, however, oppose the repleading of the state law claims in Counts One and Three.

*i.    State Law Retaliation Claim*

The Connecticut Supreme Court "look[s] for guidance to federal case law interpreting Title VII" when assessing claims under CFEPA. *Brittell v. Dep't of Corrections*, 717 A.2d 1254, 1264 (Conn. 1998); *see also Levy v. Comm'n on Human Rights and Opportunities*, 671 A.2d 349, 355 (Conn. 1996) ("Although this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes."). "The elements of a claim of retaliation under § 46a–60(a)(4) [CFEPA] are the same as for a retaliation under Title VII." *Miller v. Edward Jones & C*o, 355 F. Supp. 2d 629, 642 (D. Conn. 2005).

Since Mr. Wallace's amended pleadings fail to state a claim of retaliation under Title VII, they also fail to state a claim under CFEPA. *See, e.g.*, *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII. Accordingly, for the reasons stated above with respect to

[Plaintiff's] claims under Title VII, we affirm the district court's dismissal of [Plaintiff's] claim of retaliatory termination in violation of CFEPA[.]" (internal citations omitted)).

Accordingly, leave to amend the state law retaliation claim under CFEPA is denied as futile.

### ii.     State Law Free Speech and Religious Discrimination Claims

In the absence of opposition from Wesleyan, however, the Court will grant leave to amend Counts One and Three. *See, e.g.*, *Gary Friedrich Enterprises, LLC v. Marvel Enterprises Inc.*, 2011 WL 1142916, at *2 (S.D.N.Y. March 22, 2011) ("In light of this liberal standard for granting leave to amend . . . the amendments to the Complaint that are unopposed by the current defendants need not be discussed in detail; the plaintiffs' motion for leave to file an amended complaint is granted [with respect to the unopposed claims.]"); *Barbagallo v. General Motors Corp.*, 1990 WL 100874, at *3 (S.D.N.Y. July 13, 1990) ("Barbagallo's motion to amend his complaint to add an additional claim for constructive discharge, to the extent that it is unopposed, is granted. We perceive no reason militating against such an amendment.").

## IV.    CONCLUSION

For the foregoing reasons, the motion for leave to amend is **GRANTED in part and DENIED in part**.

Leave to amend Count Four and Count Five is **DENIED** as futile.

Leave to amend Counts One, Two, and Three is **GRANTED**.

Mr. Wallace may proceed on Count Two, religious discrimination in violation of Title VII, and the state law claims in Count One and Count Three in the Proposed Amended Complaint.

**SO ORDERED** at New Haven, Connecticut, this 31st of January, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE