UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM J. WALLACE,

    *Plaintiff*,

    v.

WESLEYAN UNIVERSITY,

    *Defendant*.

No. 3:23-cv-01461 (VAB)

## RULING AND ORDER ON MOTION TO STRIKE

William J. Wallace ("Mr. Wallace" or "Plaintiff") has sued Wesleyan University ("Wesleyan" or "Defendant"), alleging religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) and Conn. Gen. Stat. § 46A-60(b)(1).

On January 31, 2025, the Court granted in part and denied in part the Plaintiff's motion to amend the Complaint, allowing his religious discrimination claim and certain state law claims to proceed. Order, ECF No. 34. On March 19, 2025, the Plaintiff filed a Third Amended Complaint excluding the state law claims. Third Am. Compl., ECF No. 42 ("Third Am. Compl."). On April 1, 2025, the Defendant moved to strike portions of the Third Amended Complaint, arguing that it includes allegations that this Court ruled were immaterial to the Plaintiff's remaining claim for religious discrimination. Mem. of Law in Support of Def.'s Mot. to Strike, ECF No. 43-1 ("Mot. to Strike").

For the following reasons, the motion to strike the Complaint is **GRANTED in part and DENIED in part**.

The motion to strike is granted with respect to paragraphs 40 and 44.

The motion to strike is denied with respect to paragraphs 10 through 19, paragraphs 24 and 25, and portions of paragraphs 26, 32, 36, and 38.

By **February 13, 2026**, Mr. Wallace must file a Fourth Amended Complaint consistent with this Ruling and Order.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   **A. Factual Allegations**

Mr. Wallace is a Catholic priest who was hired by Wesleyan on August 17, 2015, as the university's Catholic chaplain in the Office of Religious and Spiritual Life ("ORSL"). Third Am. Compl. ¶¶ 7-8. He had the "primary responsibility for worship and the development of the Roman Catholic community on campus," including providing religious instruction, counseling students, advising the Catholic Student Organization ("CSO"), and facilitating campus-wide events and programs. *Id.* ¶ 8. Since the beginning of his employment, Mr. Wallace allegedly received annual performance reviews that "consistently showed Wallace meeting or exceeding expectations." *Id.* ¶ 9.

On November 5, 2018, the CSO submitted a formal budget request for funding for the annual ski retreat for Catholics and students of all faiths to the Wesleyan Student Assembly. *Id.* ¶ 10. This request for funding was denied on initial review and on appeal to the Student Assembly Appeals Board. *Id.* ¶¶ 10–11. The CSO had allegedly been denied funding in 2017 and 2018. *Id.* ¶ 13. In 2018, the CSO's request was one of the 16 out of 291 total requests to be denied funding, and allegedly the only religious or quasi-religious organization to be denied. *Id.* ¶ 13. The Protestant Christian Fellowship allegedly received $15,661 and the Sangha/Zen group $6,755. *Id.*

On April 28, 2019, Mr. Wallace allegedly sent an e-mail to the Interim Vice President for Equity and Inclusion and Title IX Officer Debbie Colucci "expressing concerns of bias and prejudice against the CSO and the Catholic community." *Id.* ¶ 12. This e-mail included the

2

allegation that a student on the Student Assembly had told a member of the Catholic community that the ski trip funding was denied because the Assembly was "afraid that if [they] granted the money to the CSO it would look like [the Student Assembly] was favoring Catholics." *Id.*

Around January 7, 2020, the Appeals Board allegedly announced that there had been an error in denying the CSO funding, as the Student Assembly had not followed its own procedures and "failed to properly evaluate" components of the proposed retreat. *Id.* ¶ 14. On January 24, 2020, the Student Budget Committee allegedly voted to deny CSO's budget request. *Id.* ¶ 15. Mr. Wallace chose to cover the requested amount from his personal funds. *Id.*

In May of 2019, the Religion Department at Wesleyan allegedly sponsored "a lecture run by mock nuns known as the 'The Sisters of Perpetual Indulgence.'" *Id.* ¶ 16. The mock nuns promoted the lecture with flyers referring to "Holy Communion Condoms" and calling Jesus the "Condom Savior." *Id.* Mr. Wallace allegedly received complaints from the Catholic community on campus regarding the flyers and the event. *Id.* Mr. Wallace expressed his concern to school administration, who allegedly did nothing. *Id.*

In another incident, a tenured professor allegedly berated a Catholic student for "being part of a religion that consisted of 'delusional perverts,'" and told the student that the "Catholic Church is the greatest of human rights violators." *Id.* ¶ 17. Mr. Wallace alleges that, together, these events "evinced a pattern of discrimination and an atmosphere of discrimination" against the Catholic community. *Id.* ¶ 18.

Around August 8, 2019, Bishop Michael Cote of the Norwich Diocese allegedly sent a letter to Wesleyan President Michael Roth, stating his concerns about the treatment of Catholics at Wesleyan and that the Catholic Diocese partially funded the Catholic priest's salary unlike other university chaplains. *Id.* ¶ 19.

Around July 21, 2020, a part-time Muslim chaplain allegedly indicated to the director of ORSL, Rabbi David Teva, that he was going to do prison ministry work to supplement his income from Wesleyan. *Id.* ¶ 20. Around July 30, 2020, Mr. Wallace allegedly learned that the Muslim chaplain had been "involuntarily separated from the University" and that the chaplain was unaware of this dismissal prior to a campus-wide email announcing the departure. *Id.* ¶ 21. Mr. Wallace then sent an e-mail to school administration, including Rabbi Teva, protesting the termination of the chaplain and encouraging administrators to resolve the problem with the chaplain. *Id.* ¶ 22. The school administration allegedly proceeded to terminate the chaplain's employment, "leaving the Muslim student community without any spiritual leader." *Id.*

In his communications, Mr. Wallace was allegedly clear that he viewed the administration's actions as discriminatory to the Muslim community. *Id.* On October 7, 2020, Mr. Wallace again raised the issue of the chaplain's termination to Dean of Students Richard Culliton and Vice President of Student Affairs Michael Whaley. *Id.* ¶ 23.

Mr. Wallace also questioned the "unilateral decision" by Vice President Whaley to "dismantle ORSL, reduce ORSL to one chaplain, and send the students off campus to the local places of worship." *Id.* Mr. Wallace additionally expressed his concerns regarding ORSL to President Roth on October 26, 2020. *Id.* ¶ 24.

On October 29, 2020, Mr. Wallace published an open letter in the school newspaper raising his concerns with the reduction of ORSL and the termination of the Muslim chaplain. *Id.* ¶ 25. This letter allegedly generated "wide-spread support" and resulted in an "in-depth investigation and article" covering the issues. *Id.* After the letter was published, Rabbi Teva allegedly sent an e-mail to Mr. Wallace stating that the article "accurately captured the unique, foundational, protean and crucial roles" of the Wesleyan chaplains. *Id.* ¶ 26.

Around January 28, 2021, Mr. Wallace was informed that Rabbi Teva allegedly stated "Catholics and Protestants don't need a Chaplain" in response to the controversies around the scaling down of ORSL. *Id.* ¶ 27. Shortly thereafter, Wesleyan administrators allegedly decided that ORSL would not be scaled down and agreed to hire a new full-time Muslim chaplain. *Id.*

On a video call on April 14, 2021, Vice President of Student Affairs Whaley allegedly "praised Wallace for his contributions to interfaith and vision statement" and had "nothing negative to say about Wallace." *Id.* ¶ 28. On another call on April 23, 2021, Mr. Whaley allegedly acknowledged Mr. Wallace's concerns about Rabbi Teva's "lack of communication as the Director of ORSL" and "refusal to reply to Wallace's emails." *Id.* ¶ 29. On a third call on May 14, 2021, Mr. Whaley allegedly informed Mr. Wallace that he was working on Mr. Wallace's performance review and stated that Mr. Wallace "brought a lot of strengths to his position" and had "a strong presence and engagement on campus." *Id.* ¶ 30.

In June of 2021, Mr. Wallace sent his performance report to Mr. Whaley, reflecting on his work for the year. *Id.* ¶ 32. After the report was sent, Mr. Whaley and Mr. Wallace had an in-person discussion on Mr. Wallace's work. *Id.* During this discussion, Mr. Whaley allegedly provided no criticism to Mr. Wallace regarding his advocacy related to ORSL and made no mention of any deficiencies with Mr. Wallace's work. *Id.*

Mr. Wallace later learned that his written performance appraisal, drafted by Mr. Whaley, was "overwhelmingly negative" and that Mr. Wallace would be receiving only a two percent pay increase as opposed to his prior increases of three percent. *Id.* ¶ 33.

Over the summer of 2021, Mr. Wallace requested that the search committee for the new Muslim chaplain include himself and at least one member of the Muslim community. *Id.* ¶ 34. In the fall, Rabbi Teva was appointed to lead the hiring committee, and Mr. Wallace was not made

a member, despite alleged "strenuous objections of the Muslim students who wanted Wallace on the committee." *Id.*

Around September 28, 2021, Mr. Whaley sent an e-mail to Mr. Wallace, informing him of a performance improvement plan ("PIP"). *Id.* ¶ 35. This e-mail came three days after Mr. Wallace had sent an e-mail to administration criticizing the decision to leave him off the hiring committee. *Id.* On October 20, 2021, Mr. Wallace provided a rebuttal to his negative performance review. *Id.* ¶ 36. On or around the same date, Mr. Wallace allegedly received a written PIP from Mr. Whaley, emphasizing the need for improvement and placing him "under threat of termination." *Id.* Mr. Wallace objected to the PIP in e-mails to administration, questioning whether the criticism of his work was retaliation for speaking to the school newspaper on the termination of the Muslim chaplain and criticizing the potential scaling back of ORSL. *Id.*

On June 8, 2022, Mr. Wallace was discharged from his position, allegedly "as a result of his complaints about the denied budget request, the termination of the Muslim chaplain, the dismantling of ORSL, and communicating with the [Wesleyan student newspaper]." *Id.* ¶ 38.

### B. Procedural History

On October 27, 2023, Mr. Wallace filed a Complaint in Connecticut Superior Court, Judicial District of Middlesex at Middletown, alleging claims arising under the laws of the United States. Notice of Removal, ECF No. 1, at 1–3; 28 U.S.C. § 1331.

On November 6, 2023, Wesleyan filed a notice of removal with this Court. *See* Notice of Removal, ECF No. 1.

On December 14, 2023, Wesleyan filed a motion to dismiss the Complaint, which this Court granted on August 2, 2024. *See* Mot. to Dismiss, ECF No. 14; Order Granting Mot. to

Dismiss, ECF No. 28.

On August 23, 2024, Mr. Wallace filed a motion for leave to file a First Amended Complaint alleging five counts: free speech retaliation in violation of Connecticut General Statutes § 31-51q, religious discrimination in violation of Title VII of the Civil Rights Act of 1964, religious discrimination in violation of Connecticut General Statutes § 46A-60(b)(1), retaliation in violation of Title VII of the Civil Rights Act of 1964 and Connecticut Fair Employment Practices Act (CFEPA), and hostile work environment. Mot. to Amend/Correct, ECF No. 29.

On January 31, 2025, the Court granted Mr. Wallace's motion with respect to the first three counts: free speech retaliation in violation of Connecticut General Statutes § 31-51q, religious discrimination in violation of Title VII of the Civil Rights Act of 1964, and religious discrimination in violation of Connecticut General Statutes § 46A-60(b)(1). Order, ECF No. 34 ("Order"). On February 12, 2025, Mr. Wallace filed a Second Amended Complaint including those three claims. Second Am. Compl., ECF No. 38.

On March 18, 2025, Mr. Wallace filed a motion for leave to file a Third Amended Complaint, in which he voluntarily withdrew the free speech retaliation claim. Third Mot. to Amend/Correct Compl., ECF No. 40. On March 19, 2025, the Court granted Mr. Wallace's motion. *See* Order, ECF No. 41. On the same day, Mr. Wallace filed a Third Amended Complaint. Third Am. Compl., ECF No. 42.

On April 1, 2025, Wesleyan filed a motion to strike portions of the Third Amended Complaint. Mot. to Strike, ECF No. 43 ("Mot. to Strike"). On May 2, 2025, Mr. Wallace filed his objection, First Obj., ECF No. 46. Wesleyan replied on May 8, 2025. Reply, ECF No. 47 ("Reply").

7

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally "disfavored and granted only if there is strong reason to do so." *Holland v. Chase Bank United States, N.A.*, 475 F. Supp. 3d 272, 275 (S.D.N.Y. 2020) (citation omitted). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015) (citation omitted).

"To prevail on a 12(f) motion, the moving party must demonstrate that: '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *Id.* (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). A showing of prejudice is a necessary part of a Rule 12(f) motion to strike. *See Gssime v. Nassau Cnty.*, No. 09-CV-5581(JS)(ARL), 2014 WL 810876, at *2 (E.D.N.Y. Feb. 28, 2014) (collecting cases).

The Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing," and that a motion to strike under Rule 12(f) should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979) ("If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion, especially if the presence of the material at issue does not prejudice the moving party.").

## III. DISCUSSION

Wesleyan has moved to strike from the Third Amended Complaint paragraphs 10 through 19, paragraphs 24, 25, 40 and 44, in their entirety, and portions of paragraphs 26, 32, 36, and 38.

In its January 31, 2025 Order, this Court held that "[t]o the extent Mr. Wallace alleges his termination was partially due to his advocacy on behalf of the Muslim community, he has failed to state a claim that he experienced discrimination due to his own religion." Order at 10. The Court also stated that "Mr. Wallace's allegations that Rabbi Teva professed 'the Catholics and Protestants don't need a chaplain' and had at least some authority over the staffing decisions of ORSL" met the minimum standard for a motion to amend. *Id.* at 11. The Court then granted Mr. Wallace's motion for leave to amend the Complaint "with respect to Count Two allegations that Mr. Wallace's termination was motivated by discrimination towards Catholics." *Id.*

Wesleyan argues that in light of the Court's ruling, any mention of Mr. Wallace's advocacy on behalf of the Muslim community is immaterial, impertinent, and prejudicial to the Defendant. *See generally* Mot. to Strike. Wesleyan alleges that the identified paragraphs or portions therein must be stricken because they contain allegations that are irrelevant to the remaining religious discrimination claims or otherwise do not conform with this Court's January 31, 2025 Order. *Id.*

More specifically, Wesleyan argues that paragraphs 10 through 19 should be stricken because they "contain allegations relating to student activities, the funding of those activities, and other university-wide activities, none of which pertain to Rabbi Teva's involvement in Plaintiff's employment or staffing decisions." Mot. to Strike at 3. Wesleyan also states that paragraphs 24, 25, 40, and 44, the first sentence of paragraph 26, the last two sentences of paragraph 32, the last sentence of paragraph 36, and parts of paragraph 38 must also be stricken

9

because they "relate to Plaintiff's advocacy on behalf of the Muslim students or other irrelevant issues that do not pertain to Plaintiff's religious discrimination claim." *Id.* at 3–4.

Mr. Wallace argues that the Defendant's motion "[o]verstates the Court's prior ruling" and that "[t]he language and allegations which Defendant seeks to strike contain material allegations that support the claims for religious discrimination." Mem. of Law in Support of Pl.'s Objection to Defendant's Mot. to Strike, ECF No. 46-1, at 1 ("Obj."); First Obj., ECF No. 46, at 1.

The Court discusses each issue in turn.

### A. Paragraphs 10 through 19 of the Third Amended Complaint

Paragraphs 10 through 19 of Mr. Wallace's Third Amended Complaint contain allegations related to the Wesleyan Student Assembly's alleged denial of the Catholic Student Organization's request for funding for their annual ski retreat, which was allegedly the only denial of a religious or quasi-religious organization's funding request. Third Am. Compl. ¶ 10–13. The paragraphs also allege Mr. Wallace's grievance to an administrator regarding the denied funding request, *id.* ¶ 12, "other events on campus [that] evinced anti-Catholic sentiment," *id.* ¶ 16–17, and a letter from Bishop Cote to President Roth "setting forth his concern for anti-Catholic prejudice that impacted members of the Catholic community on Wesleyan's campus," *id.* ¶ 19.

Wesleyan argues that because none of the allegations "pertain to Rabbi Teva's involvement in Plaintiff's employment or staffing decisions," they were immaterial or impertinent. Mot. to Strike at 3.

Mr. Wallace argues that, in paragraph 16, he alleged that Rabbi Teva ignored Wallace's concerns about the allegedly discriminatory events on campus, and that the allegations were

10

"background contextual evidence" that "may be the framework for admission of direct and circumstantial evidence at trial. Obj. at 5.

Wesleyan responds that none of the allegations in paragraphs 10 through 19 "implicate Plaintiff's employment," and that Mr. Wallace is simply "evad[ing] the Court's Ruling and reviv[ing] dismissed claims, specifically the hostile work environment claim."

The Court disagrees.

Wesleyan fails to show that paragraphs 10 through 19 have "no essential or important relationship to the claim for relief," or "consist[ ] of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *See Brady*, 101 F. Supp. 3d at 225. At the pleading stage, the plaintiff has a "'minimal burden' of alleging facts 'suggesting an inference of discrimination motivation.'" *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). When there is no direct evidence of discrimination, a plaintiff must plead facts that plausibly show that "the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2015)) (cleaned up).

This Court has already held that allegations related to Mr. Teva's authority over staffing decisions of ORSL meet the standard to support a claim for religious discrimination in violation of Title VII. Mr. Wallace has alleged that Mr. Teva and other administrators knew of his concerns and failed to address them. Third Am. Compl. ¶ 16. Therefore, it cannot be said that "no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893.

Although Wesleyan argues that inclusion of these allegations could "raise potentially controversial issues," which could prejudice the Defendant, the Court is not convinced. By

allowing paragraphs 10 through 19 to remain, the Court does not imply that evidence related to the allegations contained within those paragraphs would be discoverable, relevant, or admissible during discovery or in the event of a trial. *See also Schramm*, 84 F.R.D. at 299 ("If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion, especially if the presence of the material at issue does not prejudice the moving party.").

Accordingly, the Court denies Wesleyan's motion to strike paragraphs 10 through 19 of the Third Amended Complaint.

### B. Paragraphs 24, 25, 26, 32, 36, and 38 of the Third Amended Complaint

Wesleyan moves to strike paragraphs 24 and 25 in their entirety; the first sentence of paragraph 26; the last two sentences of paragraph 32; the last sentence of paragraph 36; and parts of paragraph 38.

Paragraphs 24 and 25 discuss Mr. Wallace's grievance to a Wesleyan administrator about the alleged dismantling of ORSL and the letter he sent to the school newspaper, the Argus. Third Am. Compl. ¶ 24–25. The first sentence of paragraph 26 states that Teva sent an e-mail to Wallace with praise about his characterization of the chaplains in his Argus article. *Id.* ¶ 26.

The last two sentences of paragraph 32 discuss an outdoor meeting between an administrator and Mr. Wallace during which the administrator allegedly never criticized Mr. Wallace for "a lack of teamwork on the part of Wallace, his advocacy for Omar, [] his support for on-campus ministry to students by ORSL chaplains," or the Argus article. *Id.* ¶ 32.

The last sentence of paragraph 36 states that Mr. Wallace wanted his exclusion from the search committee to be investigated. *Id.* ¶ 36. It also states that Mr. Wallace speculated in an e-mail about retaliation for "advocating on behalf of Omar and the Muslim students, for speaking to the Argus about Omar's termination and the attempt to dismantle ORSL and reduce the

chaplain staff to one, and for questioning the decision to send students off campus for their religious and spiritual needs." *Id.*

And the parts of paragraph 38 that Wesleyan seeks to strike allege that Mr. Wallace "was criticized and penalized by Whaley and Culliton for speaking out about Omar's termination" and that he was ultimately terminated "as a result of his complaints about . . . the termination of the Muslim chaplain." *Id.* ¶ 38.

Wesleyan argues that these paragraphs or portions therein "relate to Plaintiff's advocacy on behalf of the Muslim students or other irrelevant issues that do not pertain to Plaintiff's religious discrimination claim." Mot. to Strike at 3-4. Wesleyan also argues that striking these allegations is necessary "to conform the complaint to the Court's Ruling" and to "prevent prejudice to the Defendant." *Id.* at 4.

Mr. Wallace responds that paragraphs 24 and 25 "merely allege facts . . . that may (or may not) point to discriminatory animus." Obj. at 5. He argues that these paragraphs, as well as the challenged portion of paragraph 26, detail "several factors that ultimately led to the Plaintiff's termination, none of which relate to his advocacy for Muslim students. *Id.* at 10. He argues that paragraphs 26, 32, and 36 "establish[] that there was essentially no reason to suspect that he was doing a poor job or exceeding the parameters of his role with the Defendant," *id.* at 10–11, but was "nonetheless provided with a Performance Improvement Plan" to which he objected, *id.* at 11.

Wesleyan responds that the "Plaintiff attempts to evade the Court's ruling by ignoring the explicit references to the Muslim Chaplain" and that in including these allegations he seeks to revive claims that have since been dismissed or withdrawn. Reply at 2-3.

The Court disagrees

13

In its January 31, 2025 ruling, the Court found that "[t]o the extent Mr. Wallace alleges his termination was partially due to his advocacy on behalf of the Muslim community, he has failed to state a claim that he experienced discrimination due to his own religion." Order at 10. The Court also held that "Mr. Wallace's allegations that Rabbi Teva professed 'the Catholics and Protestants don't need a chaplain' and had at least some authority over the staffing decisions of ORSL" were enough to plead a claim for religious discrimination. *Id.* at 11. Wesleyan reads the Court's ruling to suggest that the only relevant allegations are those related to Rabbi Teva and his involvement in Plaintiff's employment or staffing decisions. Mot. to Strike at 3.

But the Court held that Mr. Wallace may not base his religious discrimination claim on his advocacy for the Muslim community or the Muslim chaplain, as his advocacy does not implicate Mr. Wallace's own religion. Order at 10. The Court's ruling did not imply that all details related to the events preceding and following the Muslim chaplain's departure, were irrelevant to Mr. Wallace's surviving religious discrimination claim. *See id.* (granting Mr. Wallace's motion for leave to amend with respect to the "allegations that Mr. Wallace's termination was motivated by discrimination towards Catholics").

Paragraphs 24, 25, 26, and 32, and part of paragraph 36, discuss Mr. Wallace's actions and complaints regarding the alleged dismantling of ORSL, remarks by administrators concerning his performance review, the performance improvement plan, and Mr. Wallace's alleged exclusion from the search committee. These allegations may be relevant, as they make "more or less probable" the "fact" that Mr. Wallace suffered an adverse employment action because of his religion. *See* Fed. R. Evidence 401 (defining relevant evidence); *see also* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . religion . . ."); *Santiago*

14

*v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 152 (S.D.N.Y. 2022) ("These statements support an inference of discrimination because they are remarks by decisionmaker reflecting discriminatory animus.").

The remaining portions of paragraph 36 and paragraph 38 allege that Mr. Wallace faced retaliation and was ultimately discharged because of his advocacy for the Muslim community and the Muslim chaplain. Third Am. Compl. ¶¶ 36, 38. Because Mr. Wallace voluntarily withdrew these allegations before seeking leave to file the Third Amended Complaint, he is likely unable to introduce evidence in support of the allegations, which have no bearing on the remaining religious discrimination claim in the case. Nonetheless, it is unclear whether these allegations "would result in prejudice to the movant." *Brady*, 101 F. Supp. 3d at 225 (discussing the requirements to prevail on a 12(f) motion); *see Torre v. Charter Commc'ns*, 493 F. Supp. 3d 276, 290 (S.D.N.Y. Oct. 8, 2020) (denying motion to strike for lack of prejudice where defendant "could arguably satisfy the first two requirements").

To satisfy the prejudice requirement, it is not enough for an allegation to be "potentially controversial." Mot. to Strike at 4; *see Meyenhofer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 51 (S.D.N.Y. 2020) ("despite whether the allegations may be 'embarrass[ing],' Defendants have not shown that they will cause prejudice to them in this case"). The threshold for granting a motion to strike requires that the prejudice to the moving party be undue. *See Mentus v. Gallina Dev. Corp.*, No. 6:25-CV-06122 EAW CDH, 2025 WL 2778114, at *5 (W.D.N.Y. Sept. 30, 2025) ("[T]he prejudice necessary to succeed on a motion to strike must be undue."); *Wahlstrom v. Metro-N. Commuter R.R. Co.*, No. 96 CIV. 3589 PKL, 1996 WL 684211, at *3 (S.D.N.Y. Nov. 25, 1996) ("although the allegations do not cast a positive light

upon the defendant, they are not so unduly prejudicial to the defendant that striking the paragraphs is warranted").

Wesleyan has not shown that allowing the contested allegations to remain would prejudice them in litigating the case. Consistent with its inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," the Court will limit discovery to the matters relevant to the remaining claim for religious discrimination. *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). To the extent that these allegations could affect the presentation of evidence at trial, the matter can be effectively addressed at a later date.

Accordingly, the Court denies Wesleyan's motion to strike paragraphs 24 and 25 in their entirety; the first sentence of paragraph 26; the last two sentences of paragraph 32; the last sentence of paragraph 36; and the challenged parts of paragraph 38.

### C. Paragraphs 40 and 44 of the Third Amended Complaint

Paragraphs 40 and 44 state that Mr. Wallace "was terminated because he spoke out on behalf of Muslim students and a terminated Muslim chaplain. This was in violation of his rights to be free from religious discrimination." Third Am. Compl. ¶ 40, 44.

Mr. Wallace concedes that these allegations "do mention facts regarding Wallace's speech on behalf of the terminated Muslim chaplain" but argues that "this is harmless surplusage in the context of the entire pleading." Obj. at 11.

Wesleyan argues that these allegations "prejudice the Defendant by raising potentially controversial issues, which, by Plaintiff's own admission and this Court's Ruling, are immaterial to the religious discrimination claim." Reply at 2.

Because paragraphs 40 and 44 directly allege that Mr. Wallace's termination due to his advocacy for the Muslim community constitutes religious discrimination, in violation of the Court's ruling, these paragraphs will be stricken.

Accordingly, the Court grants Wesleyan's motion to strike paragraphs 40 and 44.

## IV.   CONCLUSION

For the foregoing reasons, the motion to strike is **GRANTED in part and DENIED in part**.

The motion to strike is granted with respect to paragraphs 40 and 44.

The motion to strike is denied with respect to paragraphs 10 through 19, paragraphs 24 and 25, and portions of paragraphs 26, 32, 36, and 38.

By **February 13, 2026**, Mr. Wallace must file a Fourth Amended Complaint consistent with this Ruling and Order.

**SO ORDERED** at New Haven, Connecticut, this 30th day of January, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE